IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EDELFONSO GONZALEZ-GONZALEZ,<br><br>　　　　Defendant. | Case No. 17-20007-06-JAR |

## MEMORANDUM & ORDER

This matter is before the Court on Defendant's pro se Motion to Reopen Motion for Compassionate Release.[1] The Government filed a Response, opposing the motion.[2] For the reasons discussed below, the Court denies in part and dismisses in part this motion for compassionate release.

### I.    Background

On November 4, 2019, Defendant pleaded guilty, without a plea agreement, to Counts 1, 2, 9, 10, 11, 18 and 19 of the Third Superseding Indictment.[3] Defendant thus pleaded guilty to: conspiracy to possess with intent to distribute and distribution of 50 grams or more of methamphetamine, conspiracy to possess with intent to distribute and distribution of 50 grams or more of methamphetamine on premises where a minor resides or is present, distribution of 50 grams or more of methamphetamine, possession with intent to distribute 50 grams or more of methamphetamine, possession with intent to distribute 50 grams or more of methamphetamine

---

[1] Doc. 380. Because Defendant appears *pro se*, the Court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not act as his advocate. *Id.*

[2] Doc. 381.

[3] Doc. 239.

on premises where a minor resides or is present, maintaining a drug residence, and unlawful reentry subsequent to an aggravated felony.[4]

On September 10, 2020, the Court imposed a sentence for a controlling term of 360 months' imprisonment and 10 years of supervised release. Defendant's expected release date is May 12, 2042. Defendant is housed at Thomson FCI.

The Court denied Defendant's first motion for compassionate release for failure to exhaust administrative remedies.[5]

## II. Legal Standard

"'Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions.' One such exception is contained in § 3582(c)(1)."[6] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[7] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Before reducing a term of imprisonment, a court must find that (1) "extraordinary and compelling reasons warrant" a sentence reduction, (2) such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the applicable

---

[4] In violation of: 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846, 856(a)(1), 856(a)(2), 860a; 18 U.S.C. § 2; 8 U.S.C. §§ 1326(a), 1326(b)(2); 6 U.S.C. §§ 202(3), 202(4), 557.

[5] Doc. 377.

[6] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (alteration in original) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[7] Pub. L. No. 115-391, 132 Stat. 5194.

sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[8]  The Court may deny a § 3582(c)(1)(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[9]  If the Court grants the motion, however, it must address all three steps.[10]

### III.    Discussion

#### A. Exhaustion

Section 3582(c)(1)(A)'s exhaustion requirement is a mandatory claim-processing rule that the government may waive or forfeit.[11]   But when "properly invoked," mandatory claim-processing rules "must be enforced."[12]  Here, the Government concedes that Defendant has properly exhausted his claims that the methamphetamine disparity and his low-rick recidivism assessment warrant compassionate release.  Indeed, Defendant raised both arguments in his administrative request for compassionate release.[13]  But the Government argues that Defendant has failed to exhaust his other claim that the guideline calculation should not have included relevant conduct based on acquitted conduct.[14]  The Court agrees that this claim has not been exhausted, for it was not included in his administrative request.[15]  Because the exhaustion

---

[8] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[9] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[10] *McGee*, 992 F.3d at 1043.

[11] *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[12] *Hamer v. Neighborhood Hous. Servs. of Chi.*, 538 U.S. 17, 20 (2017); *see also United States v. Gieswein*, No. 21-6056, 2021 WL 4852420, at *2 n.2 (10th Cir. Oct. 19, 2021) ("[Section 3582(c)(1)(A)'s] exhaustion requirement, though nonjurisdictional, remains a mandatory claim-processing rule that the court must enforce when the government invokes it, as it does here."); *United States v. Purify*, No. 20-5075, 2021 WL 5758294, at *3–4 (10th Cir. Dec. 3, 2021) (enforcing exhaustion requirement because the government properly invoked it).

[13] Doc. 380-1, at p. 4.

[14] The Court notes that there was no "acquitted" conduct in this case; Defendant pled guilty.

[15] *Id.*

requirement is a mandatory condition that has been properly invoked by the Government, the Court must dismiss in part Defendant's compassionate release motion without prejudice to refiling if and when he exhausts his administrative remedy on the claim that his guideline calculation should not have included acquitted conduct.[16]

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant the motion. The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[17] That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[18] Before November 1, 2023, the Sentencing Commission had not issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant.[19] Thus, § 3582(c)(1)(A)'s consistency requirement did not constrain the Court's discretion to consider whether extraordinary and compelling reasons warranted a sentence reduction.[20]

On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reduction filed by either the Director of the Bureau of Prisons or a defendant."[21] The policy statement lists grounds that constitute extraordinary and compelling circumstances and provides additional guidance for courts. The

---

[16] *See Purify*, 2021 WL 5758294, at *4 n.3 ("Like dismissals for lack of jurisdiction, dismissals for failure to exhaust are ordinarily without prejudice.").

[17] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[18] *Id.*

[19] *See id.*

[20] *Id.* at 836–37.

[21] *United States v. Bradley*, 97 F.4th 1214, 1217 at n.1 (10th Cir. 2024).

listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence" where there has been a change in law.[22] The Sentencing Commission "considered but specifically rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons."[23] Rather, the catch-all provision allows the Court to consider any circumstances which are similar "in gravity" to the listed categories.[24]

Defendant offers the following as extraordinary and compelling reasons for relief: (1) the disparity in calculating methamphetamine mixture and actual methamphetamine requires a reduction in sentence of at least 10 years, (2) the guideline calculation should not have included relevant conduct that was based on acquitted conduct, and (3) he has received a low-risk recidivism assessment.[25]

### 1. Distinction between actual methamphetamine and mixture of methamphetamine

Defendant moves for compassionate release on the basis that his sentence is too long in that it was based on a calculation of actual methamphetamine, rather than a mixture of methamphetamine. Defendant presumably moves this Court to analyze this first claim under U.S.S.G. § 1B1.13(b)(6), which states in relevant part that if a defendant received an unusually long sentence and has served at least 10 years, a change in the law may be considered in determining whether he presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence

---

[22] U.S.S.G. § 1B1.13(b).

[23] U.S. Sent. Comm'n, Supp. to Appx. C, Amendment 814, Reasons for Amendment, at 207.

[24] *Id.*; U.S.S.G. § 1B1.13(b)(5).

[25] Doc. 373.

likely to be imposed, and after full consideration of the defendant's individualized circumstances.

Defendant's argument fails because has not yet served 10 years of his sentence; he has been in custody on these charges since October 2017, fewer than 10 years.[26] Moreover, there has not been a change in the law with respect to how the Guidelines calculate base offense levels relative to methamphetamine mixture versus actual methamphetamine.

Some courts, however, have articulated a policy disagreement with the ten-fold disparity in actual methamphetamine versus methamphetamine mixture and have granted some relief on this basis.[27] Courts that have articulated a policy disagreement with the disparity in actual methamphetamine versus methamphetamine mixture have noted several concerns. First the 10-to-1 disparity is neither based on science nor empirical evidence.[28] Second, there is too much emphasis placed on the purity of methamphetamine, which does not always correlate with a defendant's culpability or level in the hierarchy of a drug trafficking organization.

While this Court rejects any suggestion that the disparity in the calculation of actual methamphetamine versus methamphetamine mixture is alone a sufficient reason to grant relief, the disparity in some circumstances may be a relevant consideration.[29] The Court found that this disparity was a reason to grant relief in *United States v. Medina-Rodriguez*.[30] There, most of

---

[26] Doc. 266, at p. 5.

[27] *See, e.g.*, the well-reasoned opinion of Judge Brack in *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1252–58 (D.N.M. 2017).

[28] *Id.*

[29] *See United States v. Medina-Rodriguez*, No. 20-20021, 2025 WL 1114195 at *3 (D. Kan. April 15, 2025) (this Court found the disparity grounds for relief where defendant's drug calculation was largely based on his admission to historical drug distribution which did not allow for testing of drug purity, and where drugs were calculated as actual methamphetamine despite relatively small amounts of drugs actually seized testing at 28-56% purity).

[30] *Id.*

the methamphetamine attributed to the defendant could not be tested; it was based on the defendant's admission to historical drug distribution. Further, the relatively small amounts of methamphetamine seized from the defendant demonstrated that he distributed small quantities, and the purity ranged from 28 to 56%, must less than the 80% threshold for "ice."

In contrast, Defendant organized and led a large-scale drug trafficking organization that distributed heroin, cocaine, marijuana, and methamphetamine. Defendant was held accountable for 31 kilograms of actual methamphetamine, calculated at the equivalency of "ice" under the sentencing guidelines. About 13.4 kilograms were seized from codefendants who worked for Defendant. Of the 13.4 kilograms, 172 grams tested at 85% and the rest tested at 98 to 100% pure. The other 17.76 kilograms of methamphetamine attributed to Defendant was based on the seizure of $195,846 in cash from a concealed compartment in a vehicle driven by another codefendant. Assuming a conservative price of $5000 per pound, these funds equated to 17.76 kilograms of methamphetamine.[31]

Under these circumstances, the Court finds no policy disagreement in calculating this methamphetamine as actual methamphetamine. First, Defendant organized and led this drug trafficking organization; he was at the top of the hierarchy. Second, this organization imported kilograms of pure methamphetamine from the Juarez Cartel in Mexico and distributed pure or nearly pure methamphetamine in large quantities. Third, the organization used cars retrofitted with concealed compartments to import and distribute the methamphetamine, as well as money proceeds from drug sales. Thus, calculating the methamphetamine and money seized in this case as actual methamphetamine was consistent with the evidence. It correlates with and fairly represents Defendant's role in the hierarchy and in no way placed too much emphasis on the

---

[31] Doc. 266, at pp. 28, 20, 14–15.

purity of the methamphetamine, which was imported and distributed in quantities that were pure or nearly pure methamphetamine

Moreover, even if the methamphetamine attributed to Defendant had been calculated as a mixture, it would not have changed his total offense level under the guidelines. Defendant's base offense level was calculated at 38. If all of the methamphetamine attributed to Defendant was calculated as a methamphetamine mixture, Defendant's base offense level would have been calculated as 36, not 38. However, Defendant's total offense level would not change. Because Defendant's guideline calculation included 12 points for various guideline enhancements, his total offense level of 50, was reduced to 43, the maximum points under the guideline calculus. Calculating the methamphetamine as a mixture instead of actual, would result in a total offense level of 48, again greater than the maximum of 43. Thus, under this scenario, Defendant's total offense level would be reduced to 43; and Defendant's sentencing guideline range would be the same, 360 months to life.[32]

### 2. Low Risk Recidivism Assessment

Defendant also argues that his low-risk recidivism assessment is a reason for compassionate release. While the Court commends Defendant for taking steps to rehabilitate himself, rehabilitation alone is insufficient to warrant compassionate release.[33] Because Defendant cannot otherwise establish extraordinary and compelling reasons for his release, his arguments concerning rehabilitation must be rejected.

---

[32] Doc. 266, at pp. 28–32.

[33] 28 U.S.C. § 994(t); *United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021) (reaffirming Congress's plain statement that rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason for compassionate release).

## IV. Section 3553(a) Factors

The Court finds that neither of Defendant's offered reasons, singularly or in combination are extraordinary and compelling reasons for relief. The Court must consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants.[34]

But even if the Court found an extraordinary and compelling reason for relief in this case, the Court finds that the § 3553 factors weigh heavily against reducing Defendant's sentence. The nature and seriousness of his offenses weigh heavily against Defendant and justify this lengthy sentence. Defendant organized and led an extensive, large-scale drug organization that trafficked cocaine, heroin, and ice methamphetamine imported from the Juarez Cartel in Mexico.[35] Defendant was held accountable for 31 kilograms of actual methamphetamine.[36] Defendant, as the leader of this drug trafficking organization: imported the drugs from the Juarez cartel in Mexico; supplied vehicles that were retrofitted with concealed compartments for smuggling drugs and drug proceeds, recruited others to deliver, transport and sell drugs; recruited others to store drugs at residences that Defendant provided to them for reduced rent; recruited others to wire drug proceeds to Mexico; and supplied a firearm to one of his coconspirators who sold drugs.[37]

---

[34] *See* 18 U.S.C. § 3553(a)(1)–(6).

[35] Doc. 266, pp. 9–27.

[36] *Id.* at p. 28.

[37] *Id.* at p. 31.

Defendant's characteristics also weigh heavily against Defendant and justify this lengthy sentence. Defendant was convicted in 2007 in the Western District of Missouri of conspiracy to distribute 500 grams or more of cocaine and was sentenced to 37 months of imprisonment. His term of supervised release was set to commence on May 22, 2009, but he was released to an ICE detainer because he was not legally in the United States. After being deported, he returned to the United States and was found in the United States in 2017, at the time he was arrested on the charges in this case. According to a confidential source and cooperating individuals, Defendant had been in the United States dealing drugs since at least 2015.[38]

IT IS THEREFORE ORDERED BY THE COURT **that Defendant's Motion To Reopen Motion for Compassionate Release (Doc. 380)** is **denied in part and dismissed in part**.

IT IS ORDERED that Defendant's Motion for Compassionate Release **based on calculation of acquitted relevant conduct is dismissed without prejudice**.

IT IS FURTHER ORDERED that Defendant's Motion for Compassionate Release **based on methamphetamine disparity and his low-risk recidivism assessment is denied**.

**IT IS SO ORDERED.**

Dated: <u>June 11, 2025</u>

<u>s/ Julie A. Robinson</u>
Julie A. Robinson
United States District Judge

---

[38] *Id.* at pp. 13–27.